IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL BERNSTEIN, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | No. 09-659 |
| SHALE STILLER, ET AL. | : | |

**SURRICK, J.**                                                                                               **JUNE 27, 2013**

## MEMORANDUM

Presently before the Court are Respondents' Joint Motion to Dismiss (ECF No. 3) and Petitioners' Cross-Motion For Remand (ECF No. 5). For the following reasons, Respondents' Joint Motion to Dismiss will be granted and Petitioners' Cross-Motion For Remand will be denied.

**I.    BACKGROUND**

Babette F. Austrian, the mother of Petitioners Jill Bernstein and Toni Amber, died in Pennsylvania on May 9, 2000, leaving a portion of her estate in two separate trusts, one granted to each Petitioner. (Resps.' Mot. 3-4, ECF No.)[1] At the time of her death, the vast majority of Ms. Austrian's assets were held in Maryland. (Resps.' Mot. 4-5.) Ms. Austrian's will was probated in Maryland and the trust assets were transferred to accounts created and held in that state. (*Id.* at 5-6.) Separate "Exempt" and "Non-Exempt" trusts were later formed from each of the originating trusts,[2] with Ms. Austrian's husband, Dr. Robert C. Austrian, and Respondents Shale Stiller and Ann Rosewater serving as Trustees. (Resps.' Mot. 4.) After the death of Dr.

---

[1] Jill Bernstein is a resident of New Jersey. (Comp. ¶ 4, ECF No. 1.) Toni Amber is a resident of New York. (*Id.* at ¶ 5.)

[2] The Exempt Trusts are exempt from the federal generation-skipping transfer tax. The Non-Exempt Trusts are not. (Resps.' Mot. 4 n.4.)

Austrian on March 25, 2007, Respondent Bertram Snyder succeeded him as Trustee. (*Id.* at 4 n.5.)[3]

On or around December 16, 2008, Petitioners commenced a civil action, in separate petitions, against Respondents in the Court of Common Pleas of Philadelphia County (Orphans' Court Division). (Compl. ¶ 1.) Each petition seeks an accounting of the trusts and the removal of the Trustees under Pennsylvania law. (*Id.* at ¶¶ 1-2. ) The petitions were docketed as a single case. (*Id.*)

Respondents filed a Joint Notice of Removal on January 28, 2009, pursuant to 28 U.S.C. §§ 1441 and 1332, and the action was removed to this Court. (*Id.* at ¶ 3.) On February 24, 2009, Respondents filed a Joint Motion to Dismiss, asserting that there are insufficient contacts with the forum state to support personal jurisdiction. (Resps.' Mot. 7-15 (citing *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)).) In addition to their arguments regarding personal jurisdiction, Respondents asserted that this Court lacks subject-matter jurisdiction under *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467-68 (1939), which holds that if two courts are attempting to exercise *in rem* or *quasi in rem* jurisdiction, the first court to do so will hold exclusive jurisdiction over the assets in controversy. (Resps.' Mot. 16-18.) In a Cross-Motion for Remand, Petitioners agree that the Court lacks subject-matter jurisdiction under the *Princess Lida* exception, but stress that the only proper remedy is remand. (Pets.' Cross-Mot. 1, ECF No. 5.) Petitioners also argue that the Court has personal jurisdiction because the trusts in question were declared "resident trusts" on the 2006 Pennsylvania Fiduciary Income Tax Returns filed by Respondents' counsel. (*Id.* at 8.)

In a reply brief filed on April 14, 2009, Respondents withdraw their arguments contesting

---

[3] Shale Stiller is a resident of Maryland. (Compl. ¶ 7.) Ann Rosewater is a resident of Georgia. (*Id.* at ¶ 8.) Bertram Snyder is a resident of Massachusetts. (*Id*. at.¶ 9.)

the Court's subject-matter jurisdiction, arguing that their initial approach to subject-matter jurisdiction was incorrect. (Resps.' Reply 24-25, ECF No. 7.)[4] Respondents cite Maryland state statutes and caselaw that suggest that the *Princess Lida* exception does not apply because the Maryland Orphan's Court was not authorized to exercise *in rem* jurisdiction over the trust. (Resps.' Reply 25-26 (citing Md. Code Ann. Est. & Trusts § 14-101 and *Nicols v. Nicols' Estate*, 31 A.2d 326, 327 (Md. 1943)).) Respondents contend that the Court has diversity jurisdiction under 28 U.S.C. § 1332 and they continue to assert that there are insufficient contacts to support the Court's exercise of personal jurisdiction. (*Id*. at. 3.) Respondents maintain that the term "resident trust" is a Pennsylvania tax classification that carries no jurisdictional significance. (*Id.* at 8-9.) They ask the Court to dismiss the instant case for lack of personal jurisdiction before addressing the question of subject-matter jurisdiction. (*Id.* at 2 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999)).)

## II. DISCUSSION

### A. Personal Jurisdiction Should be Addressed First

Petitioners argue that we may "address threshold issues other than subject matter jurisdiction only if a compelling reason exists to do so." (Pets.' Resp. 7, ECF No. 8.) Petitioners cite no authority for the proposition that the Court's discretion is restricted to only "compelling"

---

[4] Generally speaking, new legal arguments raised in a reply brief will not be considered. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."). However, since federal courts have an independent duty to monitor their jurisdiction, we will entertain Respondents' argument. *See, e.g.*, *United Nimba Citizens Council v. Gayetay*, No. 07-3389, 2007 U.S. Dist. LEXIS 73843, at *2 n.1 (E.D. Pa. Oct. 2, 2007) ("[W]e have a continuing duty to satisfy ourselves of jurisdiction before addressing the merits of a case. Thus, we may address any question of subject matter jurisdiction *sua sponte*." (internal citations omitted)).

circumstances. Petitioners instead rely on *Ruhrgas*, in which the Supreme Court observed that courts will "customarily" address subject matter jurisdiction first. 526 U.S. at 578. Petitioners also cite *Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 435 (2007), which the Supreme Court called a "textbook case for immediate *forum non conveniens* dismissal," as an example of the "compelling circumstances" that permit a court to address threshold issues before reaching the question of subject-matter jurisdiction. (Pets.' Resp. 7.)

Petitioners' suggestion that we are so constrained directly contradicts the Supreme Court cases cited by Petitioners. The Court in *Ruhrgas* explicitly held that "there is no unyielding jurisdictional hierarchy" that requires district courts to determine subject-matter jurisdiction before addressing other jurisdictional issues. *Ruhrgas*, 526 U.S. at 575; *see also Sinochem*, 549 U.S. at 431 ("*Ruhrgas* held that there is no mandatory 'sequencing of jurisdictional issues.' In appropriate circumstances . . . a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction.") (quoting *Ruhrgas*, 526 U.S. at 578, 584). The Third Circuit has likewise recognized that district courts have broad discretion in choosing the order in which they will address jurisdictional questions. *See In re Hechinger Inv. Co. of Del*., 335 F.3d 243, 250-51 (3d Cir. 2003) ("[In *Ruhrgas*], the Court held that federal courts are not generally obligated to address 'jurisdictional issues' in any particular order."); *see also Lehigh Coal & Navigation Co. v. Geko-Mayo, GmbH*, 56 F. Supp. 2d. 559, 562 (E.D. Pa. 1999) (exercising discretion and addressing personal jurisdiction first). Judicial economy, however, is one factor that district courts may consider in deciding between jurisdictional inquiries. Where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction."

*Ruhrgas*, 526 U.S. at 588; *see also Sinochem*, 549 U.S. at 435-36 (upholding a district court's decision to first dismiss on grounds of *forum non conveniens* where discovery for personal jurisdiction would have unduly burdened petitioners). District courts in this Circuit have taken such matters into consideration when choosing which jurisdictional issue should be first addressed. *See Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (addressing personal jurisdiction first because "deciding the issue of subject matter jurisdiction . . . requires an analysis of the application of federal RICO laws against multiple, geographically diverse defendants"); *Morris v. Brandeis Univ.*, No. 99-2642, 1999 U.S. Dist. LEXIS 15767, at *3-4 (E.D. Pa. Oct. 8, 1999) ("[T]he Court will ordinarily rule on the motion to remand where the motion to remand is straightforward and the motion to dismiss for lack of personal jurisdiction will require an inquiry into state law.").

Petitioners assert that personal jurisdiction exists in the instant case because the trusts were reported as "resident" on Pennsylvania state tax returns. (Pets.' Resp. 11.) Aside from this assertion, there are no difficult questions of law that make an analysis of personal jurisdiction particularly burdensome. By contrast, the determination of subject-matter jurisdiction requires an analysis involving novel and potentially complex questions of state law.

Subject-matter jurisdiction here centers on whether the creation and continued administration of the trusts in the state courts of Maryland deprive this Court of subject-matter jurisdiction pursuant to the *Princess Lida* exception. In *Princess Lida*, the petitioners filed suit in federal court, seeking an accounting of a trust and the removal of the respondent trustee. 305 U.S. at 459. The Supreme Court determined that the district court could not exercise subject-matter jurisdiction over the case because the respondent trustee had previously commenced an account of the trust in the state court:

> [I]f the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.

*Id.* at 466. Petitioners rely on *Princess Lida* to argue that subject-matter jurisdiction is lacking, and to ask the Court to remand the case to state court. (Pets.' Cross-Mot. 6.) Respondents counter that the case at bar is neither *in rem* nor *quasi in rem* because Petitioners do not seek an accounting of the trusts, which the Court in *Princess Lida* recognized as an action *quasi in rem*. (Resps.' Reply 30.) *See also Princess Lida*, 305 U.S. at 467. Instead, Petitioners request that Respondents be forced to show why an accounting should not be made. (Resps.' Reply 30)

To answer the question of subject-matter jurisdiction, we would first need to determine whether the nature of the relief sought by Petitioners constitutes an exercise of *in rem*, *quasi in rem*, or *in personam* jurisdiction. We would then be required to determine whether the Maryland Orphan's Court had the authority to exercise *in rem* jurisdiction over the trust *res*, thereby activating the *Princess Lida* exception. (*Id.* at 24-26.) The issue would not be resolved with a *Princess Lida* analysis, however, because Petitioners also assert that the probate exception deprives us of subject-matter jurisdiction. (Pets.' Resp. 6.)[5] We would therefore need to analyze the relationship between the *Princess Lida* doctrine and the probate exception, before examining the merits of Petitioners' argument. (*See* Resps.' Reply 27 ("It is not clear whether Petitioners regard the *Princess Lida* doctrine as different from, subsumed in, or identical to, the probate exception.").)

---

[5] The probate exception is grounded in the understanding that "'a federal court has no jurisdiction to probate a will or administer an estate . . . .'" *Marshall v. Marshall*, 547 U.S. 293, 310 (2006) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). Accordingly, subject-matter jurisdiction in the adjudication of claims against a decedent's estate is only granted to a federal court "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.*; *see also Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 226-30 (3d Cir. 2008).

The Supreme Court in *Ruhrgas* determined that there are situations in which "concerns of judicial economy and restraint" may override the traditional concerns of federalism that lead a district court to address subject-matter jurisdiction before other jurisdictional concerns. *Ruhrgas*, 526 U.S. at 586. The straightforward nature of the personal jurisdiction question here, when compared to the complicated question of subject-matter jurisdiction, weighs in favor of addressing personal jurisdiction first.

B.  **Personal Jurisdiction**

In their Motion to Dismiss, Respondents assert that the Court lacks both *in rem* and *in personam* jurisdiction over the instant case. With respect to *in rem* jurisdiction, Respondents note that none of the trust property is present in Pennsylvania and that the originating accounts are held and administered entirely outside of the Commonwealth. (Resps.' Mot. 9-10.) Even though Ms. Austrian resided in Pennsylvania, they contend that her residency is insufficient to support the Court's exercise of *in rem* jurisdiction. (*Id.* at 10 (citing *Hanson v. Denckla*, 357 U.S. 249 (1958) and *In re Saddy*, 129 N.Y.S.2d 163 (Sup. Ct. 1954)).) Respondents also argue that, because the claims made by Petitioners do not arise from contacts with the Commonwealth, and because no business relating to the probate or administration of Ms. Austrian's will took place within the Commonwealth, Pennsylvania courts may not exercise specific *in personam* jurisdiction over Respondents for claims arising from the administration of the trusts. (*Id.* at 11.) Finally, Respondents conclude that there are no "continuous and systematic" contacts between Trustees and the forum state that would give the Court the authority to exercise general jurisdiction. (*Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).)

Petitioners argue that because the trusts were declared "resident trusts" on a 2006 Pennsylvania Fiduciary Income Tax Return, the Court may exercise *in rem* jurisdiction over the

trust assets. (Pets.' Cross. Mot. 8-9.) Petitioners reason that, because the Pennsylvania long-arm statute explicitly authorizes the exercise of jurisdiction over individuals who "accept election or appointment or exercise powers under the authority of this Commonwealth as a . . . trustee or other fiduciary," Respondents could have anticipated being called into a Pennsylvania court for claims relating to the administration of a trust declared "resident" in the Commonwealth. (*Id.* at 10 (quoting 42 Pa. Cons. Stat. § 5322(a)(7)(iii)).)

> With respect to trusts, Pennsylvania's long-arm statute states:
>
> A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person . . . [a]ccepting election or appointment or exercising powers under the authority of this Commonwealth as a . . . trustee or other fiduciary.

42 Pa. Cons. Stat. § 5322(a)(7). While Petitioners rely on this statute to suggest that Respondents could have anticipated being called into a Pennsylvania court, the statute does not apply because Respondents are not exercising their powers as trustees "under the authority of this Commonwealth." The trusts in question were created in the state of Maryland, and no business related to the trusts was conducted in Pennsylvania. Therefore, any power exercised by the trustees would presumably be exercised under Maryland's authority. In any event, the power exercised by Respondents as trustees was not exercised under the authority of Pennsylvania, and 42 Pa. Cons. Stat. § 5322(a)(7) therefore does not apply.

The Pennsylvania long-arm statute permits Pennsylvania courts to exercise personal jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States," and "based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). "[I]n determining whether there is personal jurisdiction, [a court] ask[s] whether, under the Due Process Clause, [a defendant] has 'certain minimum contacts with [Pennsylvania] such that the maintenance of the

8

suit does not offend traditional notions of fair play and substantial justice.'" *D'Jamoos ex rel. Estate of Weingerhoff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Personal jurisdiction encompasses both general and specific jurisdiction. "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (quoting *Helicopteros*, 466 U.S. at 416); *see also Vetrotex Certainteed Corp. v. Cons. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 n.3 (3d Cir. 1995). In order to exercise specific jurisdiction, the Court must find that a defendant has purposefully availed himself of the privilege of conducting activities within the forum state and that the claim arises out of or relates to those activities. *Metcalfe*, 566 F.2d at 334. The defendant's contact with the forum state must "amount to a deliberate reaching into the forum state to target its citizens" before a court may exercise specific jurisdiction. *D'Jamoos*, 566 F.3d at 104 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). The minimum contacts that must exist between the defendant and the forum state in order to meet the Due Process standard for personal jurisdiction are the same whether the Court attempts to exercise *in rem*, *quasi in rem*, or *in personam* jurisdiction. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977) ("[I]n order to justify an exercise of jurisdiction in rem . . . [t]he standard . . . is the minimum-contacts standard elucidated in *International Shoe*."); *U.S. Indus., Inc. v. Gregg*, 540 F.2d 142, 154 (3d Cir. 1976) (applying the test of *International Shoe* to all exercises of personal jurisdiction, "wholly independent of the label . . . that may be affixed to that jurisdiction").

Petitioners do not contend that the Court has general jurisdiction over the instant case. None of the Respondents currently live or conduct business in Pennsylvania, and no business transactions related to the trust have occurred within the Commonwealth. Even though Dr.

Austrian resided in Pennsylvania while serving as a Trustee until his death in 2007, he is not a named Respondent in this case. (Resps.' Mot. 12). Even if he were, Petitioners could not use his contacts with Pennsylvania to give the Court personal jurisdiction over the other Respondents, as the minimum contacts test must be met as to each defendant over whom a court exercises personal jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Besides Petitioner's reliance on the concept of a "resident trust," there is nothing before the Court to suggest that Respondents purposefully availed themselves of the benefits of conducting activities within the forum state. No trust property was ever held in Pennsylvania, the overwhelming majority of the trust assets originated from accounts held and maintained outside of Pennsylvania, and no business related to the probate or administration of Ms. Austrian's will took place within the Commonwealth. Ms. Austrian resided in Pennsylvania at the time of her death, but the Supreme Court has held that a decedent's residency in a state is insufficient to give that state jurisdiction over assets held elsewhere. *Hanson*, 357 U.S. at 249 ("For the purpose of jurisdiction *in rem* the maxim that personalty has its situs at the domicile of its owner is a fiction of limited utility. The maxim is no less suspect when the domicile is that of a decedent.")(internal citation omitted); *Gregg*, 540 F.2d at 153.

Petitioners assert that minimum contacts exist between the trusts and the forum state because the trusts were declared as "resident" on a 2006 Pennsylvania Fiduciary Income Tax Return and were therefore resident in Pennsylvania. (Pets.' Cross-Mot. 8.) Petitioners cite no authority to support this assertion; rather, they seem to rely solely on the appearance of the word "resident" on the tax return.

The Pennsylvania tax statutes define a "resident trust" as "(1) [a] trust created by the will of a decedent who at the time of his death was a resident individual; and (2) [a]ny trust created by, or consisting in whole or in part of property transferred to a trust by a person who at the time

of such creation or transfer was a resident." 72 Pa. Cons. Stat. § 7301(s). The case of *District of Columbia v. Chase Manhattan Bank*, 689 A.2d 539 (D.C. Ct. App. 1997), is instructive. In that case, the District's taxation of a "resident trust" was found to conform to the standards of Due Process, even though the trustees, beneficiaries, and trust assets were all located outside of the District. *Id.* at 544. The court held that the creation of the trust within the forum state created a "distinct" relationship between the state and the trust, which allowed for continued jurisdiction over the trust *res*:

> A testamentary trust of a District resident, which has been probated in the courts of the District of Columbia, has a relationship to the District distinct from the relationship, if any, between the District and the trustee or trust assets. The District's unquestioned power to resolve disputes over the trust and to order accountings . . . reflects the District's justifiable, though not necessarily exclusive, jurisdiction over the trust itself.

*Id.*; *see also Chase Manhattan Bank v. Gavin*, 733 A.2d 782, 800 (Conn. 1999) (citing *District of Columbia*, and affirming a lower court's denial of the plaintiffs' request for a refund of taxes paid on five "resident trusts").

In the instant case, the trusts were not created in Pennsylvania. Ms. Austrian's will was probated in Maryland, and the trusts have remained in that state. Pennsylvania's authority to tax the trusts ended with the death of Dr. Austrian, the only resident trustee, in 2007. *See Safe Deposit & Trust Co. v. Virginia.*, 280 U.S. 83, 93-94 (1929) (holding that a state may not tax non-resident trustees on foreign trust income); *see also Nevin v. Martin*, 22 F. Supp. 836, 841 (D.N.J. 1938) ("The court [in *Safe Deposit*] was not concerned with the domicil of the owner, but with the situs of the property."), *aff'd per curiam*, 307 U.S. 615 (1939). Because there are insufficient minimum connections to support Pennsylvania's taxation of the trust assets, there are insufficient minimum contacts to support a claim of personal jurisdiction. *See MeadWestvaco Corp. v. Ill. Dep't of Revenue*, 553 U.S. 16, 24 (2008) ("The Due Process Clause demands that

11

there exist some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax . . . .") (citations and internal quotation marks omitted); *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 342 (1954) ("Where there is jurisdiction neither as to person nor property, the imposition of a tax would be *ultra vires* and void.") (citations and internal quotation marks omitted); *Consolidation Coal Co. v. Bailey*, 467 F.2d 1124, 1126 (3d Cir. 1972) (upholding a Pennsylvania township's wage tax against a challenge by West Virginia miners because their daily work in a Pennsylvania mine created a sufficient nexus, which justified taxation). Respondents have noted in their reply brief that, as of 2008, all trust income was reported exclusively on Maryland fiduciary tax returns. (Resps.' Reply 16.) Indeed, Petitioners have provided nothing to indicate that it was Pennsylvania's "resident trust" statute that authorized Pennsylvania to tax these trust assets and not Dr. Austrian's residence in the Commonwealth.

Even if the Court were to accept that the trusts themselves are resident in Pennsylvania, the residency of the trust assets would still not be sufficient to give the Pennsylvania courts personal jurisdiction over Respondents in the absence of other minimum contacts between Respondents and the forum state. *See Shaffer*, 433 U.S. at 213 (holding that the residency of assets in Delaware was not enough to give Delaware personal jurisdiction over individuals otherwise unconnected to the state); *see also Nehemiah v. Athletics Cong. of U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985) ("In *Shaffer*, the Court held that the mere presence of property owned by a non-resident defendant in the forum state was insufficient to support *quasi in rem* jurisdiction . . . ."). *Cf. BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263 (3d Cir. 2000) (citing *Shaffer* to support conclusion that a Taiwanese corporation's ownership of stock in a Delaware company could not support the exercise of general jurisdiction against the corporation, even though the Delaware company had sufficient minimum contacts with the forum state).

Petitioners' attempt to distinguish their case from *Shaffer*, arguing that *Shaffer* involved the exercise of a Delaware statute that attempted to attach residency to the assets of a Delaware corporation while, in the instant case, the "choice" to declare the trust as resident was made by Respondents. (Pets.' Resp. 12.) To the extent that the residency of the trusts in the instant matter was linked to the residency of Ms. Austrian by statutory mandate, *Shaffer* controls. The declared residency of the trust assets is insufficient to give the Court personal jurisdiction over Respondent Trustees.

Because there have been no continuous and systematic contacts between Respondents and the forum and because Respondents have not purposefully availed themselves of the benefit of conducting activities within the forum, the contacts between Respondents and the Commonwealth of Pennsylvania are insufficient to meet "traditional notions of fair play and substantial justice." *See Int'l Shoe Co.,* 326 U.S. at 316; *Metcalfe*, 566 F.3d at 338. Accordingly, Petitioners are unable to establish a prima facie case for personal jurisdiction. We will dismiss the case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## III. CONCLUSION

For the foregoing reasons, Respondents' Joint Motion to Dismiss will be granted. The Cross-Motion For Remand will be denied.

An appropriate order will follow.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**